THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LORELL JOHNSON, Defendant-Appellant.

First District (6th Division) No. 1—07—3372

Opinion filed September 18, 2009.

Patricia Unsinn and Brian E. Koch, both of State Appellate Defender's
Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Peter
Fischer, and Amy Watroba Kern, Assistant State's Attorneys, of counsel), for
the People.

JUSTICE McBRIDE delivered the opinion of the court:

Following a jury trial which included deoxyribonucleic acid (DNA) evidence, defendant Lorell Johnson was found guilty of aggravated criminal sexual assault and not guilty of aggravated kidnaping and the trial court sentenced him to a term of 30 years to run consecutive to defendant's prior conviction. Defendant appeals, arguing that the admission of inculpatory DNA evidence violated his sixth amendment confrontation rights and that the trial court erred in admitting this DNA evidence because a sufficient foundation was not established for the forensic scientist's opinion testimony.

The following evidence was admitted at defendant's jury trial. Shortly after midnight on July 12, 2003, the victim, F.F., was standing in line at Maxwell's, a neighborhood hot dog stand on the south side of Chicago. At the time, F.F. was addicted to drugs. Defendant approached F.F. as she stood in line. F.F. had never seen defendant before that moment. F.F. and defendant spoke. He told her that he had drugs at his house. F.F. got out of the line and followed defendant to get the drugs. She followed him down an alley into the backyard of an abandoned building. F.F. wanted to leave, but defendant grabbed her body and dragged her up the stairs of the building to the top floor. F.F. yelled, "stop," and "no," but defendant continued to carry her up the stairs. F.F. scraped her arm on the railing while trying to reach for it.

When they reached the top of the stairs, defendant pulled F.F. into a dark room and threw her against the wall. F.F. hit her head on a low part of the ceiling. He pushed her against the window, put his hand around her throat and told her to be quiet or he would throw her out the window. Defendant pulled down F.F.'s pants and then his own pants. He then had vaginal intercourse with F.F. F.F. described the assault as violent and that he "jammed" his penis into her vagina. Defendant removed his penis from F.F.'s vagina, turned to the side and ejaculated on the floor.

Defendant then pulled up his pants and ran down the stairs. F.F. waited until she could no longer hear defendant on the stairs. She left and went to the nearest pay phone at 51st Street and Ashland to call the police. She saw defendant running across the street and pointed him out to a group of nearby men, who then chased defendant. When the police arrived at F.F.'s location, she was incoherent, screaming and pointing in several directions. A police officer suggested she seek treatment for the scrape on her arm that was bleeding. F.F. refused and tried to tell the police that defendant was running by across the street, but the officer did not give chase and the group of men did not catch him. F.F. led the police officer to the abandoned building and told him that defendant had ejaculated on the floor. The officer called for an

evidence technician to come to the scene and recover the stain. The stain was recovered on two swabs and was later submitted for biological testing. F.F. became frustrated with the police officer because she felt he was not trying to catch defendant so she left the scene and stayed with a friend for several days.

Later, in 2004, F.F. entered a drug rehabilitation facility. In January 2005, a detective located F.F. at the facility. The detective spoke with F.F. about the sexual assault. After receiving information from the Illinois State Police crime lab (ISP lab), defendant was arrested. F.F. viewed a lineup at Area One and immediately identified defendant as the man who sexually assaulted her.

During the trial, defendant's attorney filed a "Motion *in limine* to Exclude Testimony of Reviewing Expert as Lacking Foundation and Improper Hearsay." The motion asserted that the State would seek to introduce DNA evidence through an analyst, Charlotte Word, who had reviewed the file, but did not participate in any of the actual testing. Defense counsel argued that "[i]ntroduction of this evidence solely through this witness fails to lay a proper foundation for the testing conditions and procedures," and "violates defendant's rights to confrontation" under the sixth amendment and article I, section 8, of the Illinois Constitution. The trial court heard argument on the motion and denied the motion. The court held that the testimony about the DNA profile was admissible if it was the sort of information reasonably relied on by experts in the field.

Charlotte Word testified as a DNA analysis expert. Defendant made no objection to her qualification as an expert. She stated that she worked at Orchid Cellmark in Germantown, Maryland, from 1990 to 2005, when the facility closed. In 2004, Cellmark had a contract with the ISP lab to complete overflow testing. Cellmark was accredited by the American Association of Blood Banks and by the American Society of Crime Laboratory Directors. Word worked as a laboratory director in 2004.

Word stated that she did not participate in the testing of the swab recovered from the crime scene and the preparation of a DNA profile, but she was able to testify as to the results. Her testimony was based on her review of the notes and documentation kept in the lab folder. She said that through her review of the case file, she was able to determine that the proper procedures were followed with the appropriate control tests. The results showed a single male donor of the semen from the swab. Based on her independent review, Word concluded that the results were correct. She observed no discrepancies in the case folder.

The results and the swab were sent to the ISP lab. Following defendant's arrest, a buccal swab was taken from defendant and sent to the ISP lab for testing. ISP lab forensic scientist Brian Schoon testified at trial that he received defendant's buccal swab in June 2005. He performed tests and prepared a DNA profile from the buccal swab. Schoon compared defendant's DNA profile with the single male donor DNA profile obtained from the swab and concluded that the profiles matched. Schoon conducted a statistical analysis and found that the DNA profile from the swab would be expected to occur in 1 in 710 quadrillion black, 1 in 550 quadrillion white or 1 in 430 quadrillion Hispanic individuals. Schoon stated all of his results and conclusions were to a reasonable degree of scientific certainty.

Defendant did not offer any evidence in his case-in-chief. Following deliberations, the jury found defendant guilty of aggravated criminal sexual assault and not guilty of aggravated kidnaping. Defendant filed a motion for a new trial, which included claims that the trial court erred in overruling defense counsel's objections for foundation and confrontation to the testimony about the Cellmark DNA profile. The trial court denied the motion and subsequently sentenced defendant to 30 years in prison to be served consecutive to his sentence for a prior conviction.

This appeal followed.

On appeal, defendant argues that the DNA profile prepared by Cellmark was inadmissible because (1) it was testimonial hearsay and violated his rights under the confrontation clause because defendant did not have an opportunity to cross-examine any of the analysts who prepared the profile, and (2) the State failed to lay a proper foundation for this evidence as there was no evidence that the equipment used to prepare the profile was adequately calibrated and functioning properly.

Initially, the State points out that defendant did not raise any objection that Schoon's testimony violated his confrontation rights in his motion *in limine* nor in his motion for a new trial, and therefore, any error in Schoon's testimony is forfeited. To preserve an issue for review, defendant must object both at trial and in a written posttrial motion. *People v. Woods*, 214 Ill. 2d 455, 470 (2005), citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). If a defendant fails to satisfy either prong of this test, his challenge is considered waived on appeal. *Woods*, 214 Ill. 2d at 470. "This rule is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level."

*Woods*, 214 Ill. 2d at 470. Thus, any issue regarding Schoon's testimony is forfeited.

However, in his reply brief, defendant asserts that should we find that he forfeited any error in respect to Schoon's testimony, then we should review that issue for plain error. Defendant also contends that he may raise plain error for the first time in his reply brief, despite the fact that Supreme Court Rule 341(h)(7) holds that "[p]oints not argued are waived and shall not be raised in the reply brief." 210 Ill. 2d R. 341(h)(7). Defendant cites to the supreme court's decision in *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000), in which the supreme court found that it was not precluded from reviewing the defendant's plain error argument despite her failure to raise it in her opening brief.

■ Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." *People v. Hall*, 194 Ill. 2d 305, 335 (2000). "However, before invoking the plain error exception, 'it is appropriate to determine whether error occurred at all,' because without error, there can be no plain error." *People v. Smith*, 372 Ill. App. 3d 179, 181 (2007), quoting *People v. Wade*, 131 Ill. 2d 370, 376 (1989). Therefore, we will review the issue to determine if there was any error before considering it under plain error.

The sixth amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. This part of the sixth amendment is known as the confrontation clause and applies to the states through the fourteenth amendment. *People v. Stechly*, 225 Ill. 2d 246, 264 (2007). In *Crawford v. Washington*, the Supreme Court held "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually proscribes: confrontation." *Crawford v. Washington*, 541 U.S. 36, 68-69, 158 L. Ed. 2d 177, 203, 124 S. Ct. 1354, 1374 (2004). "However, the *Crawford* Court explicitly declined to define what exactly makes a statement

'testimonial.' " *Stechly*, 225 Ill. 2d at 266; see *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The hearsay rule generally prohibits the introduction of an out-of-court statement used to prove the truth of the matter asserted. *People v. Spicer*, 379 Ill. App. 3d 441, 449 (2007). But the *Crawford* Court pointed out that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See *Tennessee v. Street*, 471 U.S. 409, 414[, 85 L. Ed. 2d 425, 430-31, 105 S. Ct. 2078, 2081-82] (1985)." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. Here, defendant asserts that the DNA profile prepared by Cellmark was testimonial hearsay in violation of the confrontation clause since no one who worked on its analysis testified at his trial.

Recently, two divisions of the First District have considered the argument raised by defendant. In *People v. Williams*, 385 Ill. App. 3d 359 (2008), *appeal allowed*, 231 Ill. 2d 653 (2009), the defendant was convicted of aggravated criminal sexual assault, aggravated kidnaping and aggravated robbery. At the bench trial, a forensic scientist with the ISP lab testified that the victim's sexual assault kit was sent to Cellmark for analysis and a DNA profile was prepared. The scientist compared the Cellmark DNA profile with the defendant's DNA profile and concluded that they were a match. The scientist admitted that she did not perform any of the physical testing on the samples herself. On appeal, the defendant contended that the results of Cellmark's testing were testimonial in nature and violated his confrontation rights because no Cellmark representative was available for cross-examination.

The third division of this court disagreed with the defendant. The reviewing court pointed out that "underlying facts and data may be disclosed by an expert, not for the truth of the matter asserted, but for the purpose of explaining the basis of his opinion." *Williams*, 385 Ill. App. 3d at 369, citing *People v. Nieves*, 193 Ill. 2d 513, 528 (2000), citing *People v. Pasch*, 152 Ill. 2d 133, 176 (1992). "Moreover, '[i]t is well established that an expert may testify about the findings and conclusions of a nontestifying expert that he used in forming his opinions.' " *Williams*, 385 Ill. App. 3d at 369, quoting *People v. Jones*, 374 Ill. App. 3d 566, 579-80 (2007). The court found that Cellmark's report was not being offered for the truth of the matter asserted, but as part of the basis of the scientist's opinion. The court noted that the scientist testified that she evaluated the data, which included Cellmark's report as well as findings of other ISP lab scientists, before forming her opinion. *Williams*, 385 Ill. App. 3d at 369. Relying on the conclusion in *People v. Almighty Four Hundred*, 287 Ill. App. 3d 123, 132 (1997), that "an

expert witness may base his or her opinion on information that has not been admitted into evidence so long as that information is reliable and is of a type reasonably relied upon by experts in that field," the *Williams* court found that Cellmark's report "included data of the type generally relied upon by experts in the field" (*Williams*, 385 Ill. App. 3d at 369-70). The court held that Cellmark's report was not offered to prove the truth of its results, and thus, the confrontation clause was not violated. *Williams*, 385 Ill. App. 3d at 370. The court in *Williams* concluded its analysis by noting that "defendant essentially requests that we require each and every individual involved in the testing and analysis of DNA to testify at trial. For obvious reasons in the abstract and for those provided in the case at bar, we decline to issue such a ruling." *Williams*, 385 Ill. App. 3d at 370.

The first division reached the same result in *People v. Johnson*, 389 Ill. App. 3d 618 (2009). The defendant involved in that case is the same defendant as in the present appeal. In that case, defendant was convicted of aggravated criminal sexual assault and aggravated kidnaping stemming from the unrelated March 2002 sexual assault of T.W. At trial, Alissa Ginglesberger, a Cellmark analyst, testified as a DNA analysis expert regarding the procedures used by Cellmark to analyze the DNA on the victim's vaginal swabs. Ginglesberger admitted that she personally did not participate in the preparation of the DNA profile, but her role was as a " 'technical reviewer.' " *Johnson*, 389 Ill. App. 3d at 626. She testified that approximately 10 Cellmark employees assisted in the laboratory work and that "all of their methods, conclusions, and results were to a reasonable degree of scientific certainty." *Johnson*, 389 Ill. App. 3d at 627. Brian Schoon, a forensic scientist with the ISP and the same forensic scientist who testified in the instant case, stated that he obtained a full DNA profile from defendant's buccal swab and compared it to the DNA profile prepared by Cellmark from the victim in the March 2002 sexual assault. Schoon concluded that the DNA profiles matched.

On appeal, defendant raised the same argument as he does in this appeal, that the "evidence regarding the male DNA profile prepared by Cellmark amounted to testimonial hearsay, in violation of defendant's constitutional right to confrontation, because none of the analysts who actually prepared the profile were presented for cross-examination." *Johnson*, 389 Ill. App. 3d at 626. The first division discussed the decision in *Williams* and found no reason to depart from its holding. *Johnson*, 389 Ill. App. 3d at 631.

> "Here, as in *Williams*, the report was not offered to prove the truth of Cellmark's findings; instead, Ginglesberger testified regarding the report to provide a basis for her own opinion.

Moreover, Ginglesberger—unlike the DNA expert in *Williams*—was an actual Cellmark representative, subject to cross-examination by defense counsel. Accepting defendant's contentions as true in this case would require each and every individual involved in the testing and analysis of DNA to testify at trial, a proposition this court explicitly rejected in *Williams*, 385 Ill. App. 3d at 370.

Because the report was not offered to prove the truth of Cellmark's findings, the confrontation clause was not violated. See *Williams*, 385 Ill. App. 3d at 370. There is no *Crawford* error to review here." *Johnson*, 389 Ill. App. 3d at 631-32.

Likewise, we agree with the decisions in *Williams* and *Johnson*, and see no reason to depart from their holdings. We are faced with the same factual situation as the court in *Johnson*. Word, a Cellmark analyst, testified about the laboratory's procedures and practices regarding DNA testing, though she did not participate in the testing. She used the report that was prepared as the basis of her expert opinion that the proper procedures were followed in the analysis. Defendant's attorney was able to cross-examine Word about the basis of her opinion and called attention to the fact that she did not participate in the testing and that she assumed that the analysts properly documented each part of the testing, as required by Cellmark. The same reasoning holds true for Schoon. He used the Cellmark report as the basis for part of his opinion that the male DNA profile obtained from the crime scene matched defendant's DNA. The Cellmark report was not offered to prove the truth of its contents, but was used as part of the bases for two experts' opinions. Accordingly, we find no *Crawford* violation in this case, and thus, no error.

Further, as the State points out in its brief, the California Supreme Court recently considered this question and held that a DNA report is not testimonial hearsay. While we observe that the findings of the courts of other states are not binding on this court (*People v. Sullivan*, 366 Ill. App. 3d 770, 781 (2006)), we find this decision to be helpful to our analysis. In *People v. Geier*, 41 Cal. 4th 555, 593-94, 161 P.3d 104, 131, 61 Cal. Rptr. 3d 580, 611 (2007), the defendant alleged a violation of his confrontation rights under *Crawford* because the opinion of the prosecution's DNA expert was based on testing she did not personally conduct. The *Geier* court extensively reviewed different opinions from several jurisdictions before concluding that "scientific evidence memorialized in routine forensic reports is not testimonial." *Geier*, 41 Cal. 4th at 606, 161 P.3d at 139, 61 Cal. Rptr. 3d at 621. The reviewing court found support for its conclusion in *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006). In *Davis*, the Supreme Court further explained what constituted a "testimonial" out-of-court statement.

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74.

■ Based on the Supreme Court's decisions in *Crawford* and *Davis* as well as the decisions from other jurisdictions, the court in *Geier* found:

"While we have found no single analysis of the applicability of *Crawford* and *Davis* to the kind of scientific evidence at issue in this case to be entirely persuasive, we are nonetheless more persuaded by those cases concluding that such evidence is not testimonial, based on our own interpretation of *Crawford* and *Davis*. For our purposes in this case, involving the admission of a DNA report, what we extract from those decisions is that a statement is testimonial if (1) it is made to a law enforcement officer or by or to a law enforcement agent and (2) describes a past fact related to criminal activity for (3) possible use at a later trial. Conversely, a statement that does not meet all three criteria is not testimonial." *Geier*, 41 Cal. 4th at 605, 161 P.3d at 138-39, 61 Cal. Rptr. 3d at 620.

■ The court went on to point out that the DNA analyst's notes during testing were not themselves "accusatory, as DNA analysis can lead to either incriminatory or exculpatory results." *Geier*, 41 Cal. 4th at 607, 161 P.3d at 140, 61 Cal. Rptr. 3d at 622. In contrast, the accusatory statements, that the defendant's DNA matched that taken from the victim's vagina and that such a result was very unlikely unless the defendant was the donor, the supreme court noted, came from the live testimony of the DNA expert. *Geier*, 41 Cal. 4th at 607, 161 P.3d at 140, 61 Cal. Rptr. 3d at 622. "*Davis* confirms that the critical inquiry is not whether it might be reasonably anticipated that a statement will be used at trial but the circumstances under which the statement was made. We conclude therefore that the DNA report was not testimonial for purposes of *Crawford* and *Davis*." *Geier*, 41 Cal. 4th at 607, 161 P.3d at 140, 61 Cal. Rptr. 3d at 622.

After briefing had concluded in this case, the United States Supreme Court issued its decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009), which revisited the confrontation clause under *Crawford*. Thus, we consider what impact, if any, this case has on the present case. In *Melendez-Diaz*, the

defendant was charged with distributing and trafficking cocaine. Rather than offer live testimony to prove that the substance was cocaine, the prosecution "submitted three 'certificates of analysis' showing the results of the forensic analysis performed on the seized substances. The certificates reported the weight of the seized bags and stated that the bags '[have] been examined with the following results: The substance was found to contain: Cocaine.' [Citation.] The certificates were sworn to before a notary public by analysts *** as required under Massachusetts law." *Melendez-Diaz*, 557 U.S. at 308, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531. Massachusetts law permitted the use of such affidavits to provide *prima facie* evidence of the analyzed substance's composition, quality, and net weight. *Melendez-Diaz*, 557 U.S. at 309, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531. At trial, the defendant objected to the admission of these certificates, but his objection was overruled and the jury found the defendant guilty. On appeal, the defendant challenged this admission as a violation of his sixth amendment rights, but the appellate court rejected the defendant's claim, relying on a Massachusetts Supreme Court decision which held that "the authors of certificates of forensic analysis are not subject to confrontation under the Sixth Amendment." *Melendez-Diaz*, 557 U.S. at 309, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531. The state supreme court denied review.

The Supreme Court found that "[t]he 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Melendez-Diaz*, 557 U.S. at 310-11, 174 L. Ed. 2d at 321, 129 S. Ct. at 2532, quoting *Davis v. Washington*, 547 U.S. 813, 830, 165 L. Ed. 2d 224, 242, 126 S. Ct. 2266, 2278 (2006). Accordingly, the Court held that "under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to ' "be confronted with" ' the analysts at trial." *Melendez-Diaz*, 557 U.S. at 311, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2532, quoting *Crawford*, 541 U.S. at 54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365. "The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against [the defendant] was error." *Melendez-Diaz*, 557 U.S. at 329, 174 L. Ed. 2d at 332, 129 S. Ct. at 2542.

We point out two things of note about the Supreme Court's decision in *Melendez-Diaz*. First, the Court stated in a footnote that its decision does not hold that "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or ac-

curacy of the testing device, must appear in person as part of the prosecution's case"; rather, it is up to the prosecution to decide which steps to introduce into evidence at trial. *Melendez-Diaz*, 557 U.S. at 311 n.1, 174 L. Ed. 2d at 322 n.1, 129 S. Ct. at 2532 n.1. Second, Justice Thomas in his concurrence specifically noted that he "continue[s] to adhere to [his] position that 'the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' " *Melendez-Diaz*, 557 U.S. at 329, 174 L. Ed. 2d at 333, 129 S. Ct. at 2543 (Thomas, J., concurring), quoting *White v. Illinois*, 502 U.S. 346, 365, 116 L. Ed. 2d 848, 865, 112 S. Ct. 736, 747 (1992) (Thomas, J., concurring, joined by Scalia, J.). Justice Thomas wrote that he joined the majority's decision because the certificates at issue were clearly affidavits within the class of testimonial statements covered by the confrontation clause. *Melendez-Diaz*, 557 U.S. at 330, 174 L. Ed. 2d at 333, 129 S. Ct. at 2543 (Thomas, J., concurring).

Significantly, the decision in *Melendez-Diaz* did not reach the question of whether the analyst who conducted the scientific tests must testify at a defendant's trial, which is the issue raised by defendant in the instant case. In contrast with certificates presented at trial in *Melendez-Diaz*, Word and Schoon each testified in person as to their opinions based on the DNA testing and were subject to cross-examination. In *Larkin v. Yates*, No. CV 09—2034—DSF (CT) (C.D. Cal. July 9, 2009), a district judge in the United States District Court, Central District of California, reached the same conclusion under similar facts. In that case, a supervisor of a lab testified about the results of DNA testing. The district judge found that the supervisor's "testimony about the test results performed by someone else is not akin to the affidavit-like certificates of analysis in *Melendez-Diaz*. Whereas the certificates of analysis in *Melendez-Diaz* were 'functionally identical to live, in court testimony,' the test results here, at best, served as a partial basis for the opinion of a testifying expert." *Larkin*, slip op. at ___.

The California Second District Court of Appeal in *People v. Rutterschmidt*, 176 Cal. App. 4th 1047 (2009), recently considered *Geier* in light of *Melendez-Diaz*. In that case, the defendant challenged the expert testimony as to the results of toxicology analyses performed on the decedent's blood by a laboratory director and supervisor who reviewed the results, but did not perform any of the tests. The defendant contended that the "confrontation clause required the testimony of the analysts who personally tested the samples to testify."

*Rutterschmidt*, 176 Cal. App. 4th at 1071. The defendant's objection was overruled; however, the reports themselves were not admitted into evidence. On appeal, the defendant argued that *"Geier's* holding and rationale have been rendered obsolete" by the Supreme Court's decision in *Melendez-Diaz*. *Rutterschmidt*, 176 Cal. App. 4th at 1074. The appeals court disagreed and found that the challenged testimony did not fall within the holding of *Melendez-Diaz*. There, the toxicological findings were offered by live testimony, not by an affidavit, and the lab supervisor "testified as a qualified expert, subject to cross-examination, that his review of data obtained under his supervision supported his conclusion as to the presence of alcohol and drugs in biological samples taken from [the decedent's] body." *Rutterschmidt*, 176 Cal. App. 4th at 1075. The court found that *Melendez-Diaz* did not reach the question of whether this type of testimony violates *Crawford*. *Rutterschmidt*, 176 Cal. App. 4th at 1075.

We agree with the conclusions reached in *Larkin* and *Rutterschmidt* that the holding in *Melendez-Diaz* is distinguishable from instances in which a witness testifies at trial about scientific analyses in which he or she did not participate in the analysis; and therefore, it does not affect our decision.

We are not persuaded by defendant's arguments urging us to decline to follow *Williams*. Defendant asserts that *Williams* was wrongly decided because "a trier of fact cannot use an out-of-court statement to support a testifying expert's opinion without first determining whether the statement is true." As support, defendant relies extensively on the academic works of two legal scholars and an out-of-state case, *People v. Goldstein*, 6 N.Y.3d 119, 843 N.E.2d 727, 810 N.Y.S.2d 100 (2005). However, *Goldstein* involved the testimony of a psychiatrist retained by the prosecutor who opined on the defendant's sanity at the time of the murder at issue by interviewing several people and reciting the substance of their statements at trial. *Goldstein*, 6 N.Y.3d at 123-24, 843 N.E.2d at 729-30, 810 N.Y.S.2d at 102-03. *Goldstein* presented a different hearsay question and had nothing to do with the question presented in this case, and we find defendant's reliance to be misplaced. Based upon all of the above, we conclude that no error occurred as a result of the introduction of the testimony of Word. Accordingly, there was no plain error.

Next, defendant contends that the State failed to establish a proper foundation for admission of the Cellmark DNA profile because there was no evidence that the equipment used to prepare the profile was adequately calibrated and functioning properly.

In *Wilson v. Clark*, the Illinois Supreme Court adopted Rule 703 of the Federal Rules of Evidence, allowing an expert to give his opinion based on facts not in evidence if those facts are " 'of a type reasonably relied upon by experts in the particular field.' " *Wilson v. Clark*, 84 Ill. 2d 186, 193 (1981), quoting Fed. R. Evid. 703. However, where the expert testimony is based upon an electronic or mechanical device, the expert must provide some foundational proof that the device was functioning properly at the time it was used. *People v. Raney*, 324 Ill. App. 3d 703, 710 (2001); see also *People v. Bynum*, 257 Ill. App. 3d 502 (1994). The *Raney* court did recognize that "[i]t may not be feasible for each expert to personally test the instrument relied upon for purposes of determining what is a suspected controlled substance." *Raney*, 324 Ill. App. 3d at 710.

This issue was also raised in *Williams* and *Johnson*. In *Williams*, no Cellmark representative testified, but the DNA expert from the ISP lab stated that Cellmark was an accredited laboratory and was required to follow specified guidelines in order to perform DNA analysis. The expert also said that "Cellmark's testing and analysis methods were generally accepted in the scientific community, so much so that she routinely relied on Cellmark's facility." *Williams*, 385 Ill. App. 3d at 366. The *Williams* court concluded that despite the expert's inability to speak to the precise conditions of Cellmark's equipment, she "provided a sufficient foundation upon which to partially base her assessment and conclusion." *Williams*, 385 Ill. App. 3d at 366. The court distinguished *Raney* as the expert in its case was able to provide some foundational support whereas the expert in *Raney* did not provide any testimony about the equipment or how she knew the results were accurate. *Williams*, 385 Ill. App. 3d at 366; see *Raney*, 324 Ill. App. 3d at 710. "Consequently, defendant's argument is based upon pure speculation that the equipment may not have been working properly, and such speculation is best tested during cross-examination." *Williams*, 385 Ill. App. 3d at 366.

The *Johnson* court reached the same conclusion. There, the court discussed the analysis in *Williams* and found stronger foundational grounds were present in its case than in *Williams*. *Johnson*, 389 Ill. App. 3d at 629. The court pointed out that Ginglesberger, a Cellmark employee, was qualified as an expert without objection and testified about Cellmark's accreditations. She also explained the process Cellmark used in its DNA testing and although she did not perform the testing, she conducted an independent review to ensure that all procedures were followed. *Johnson*, 389 Ill. App. 3d at 630. The court concluded that, based on the holding in *Williams*, Ginglesberger " 'provided a sufficient foundation upon which to partially base her

assessment and conclusion.' " *Johnson*, 389 Ill. App. 3d at 630, quoting *Williams*, 385 Ill. App. 3d at 366.

Again, the instant case presents the same factual situation as that in *Johnson*. Here, Word testified as a DNA expert, without objection, and she worked at Cellmark as a laboratory director. She testified extensively about Cellmark's accreditations and the thorough review required to attain such accreditations. She stated that the proper procedure mandated specific notations and the subject case file indicated that those procedures were followed. Her opinion was based on this review of the case file. We agree with the conclusion reached in *Williams* and *Johnson*. Though Word did not perform any of the testing, her testimony showed a sufficient foundation of Cellmark's procedures and specifications "upon which to partially base her assessment and conclusion." *Williams*, 385 Ill. App. 3d at 366. Therefore, we find no foundational error in this case.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and J. GORDON, J., concur.