# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Kendrick, 2013 IL App (1st) 090120-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE KENDRICK, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-09-0120 |
| Filed | May 7, 2013 |
| Rehearing denied | June 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated criminal sexual assault was upheld over his contentions that the trial court's questioning of prospective jurors violated Supreme Court Rule 431(b) and that his confrontation rights were violated by the admission of the testimony of a forensic analyst who relied on a report prepared by a nontestifying analyst, since defendant waived any objection to the trial court's error in failing to ask the prospective jurors if they accepted the *Zehr* principles, and he failed to show any plain error occurred, and an expert may testify about a DNA analysis in another analyst's report without violating the confrontation clause. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-4556; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Patricia Unsinn, and Brett C. Zeeb, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy Watroba Kern, and Robert Kline, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.
Justices Connors and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial, defendant Terrence Kendrick was convicted of the aggravated criminal sexual assault of 16-year-old K.C. Defendant was subsequently sentenced to an extended-term sentence of 45 years' imprisonment. On appeal, defendant contends that (1) the trial court failed to adequately question prospective jurors pursuant to the requirements of Illinois Supreme Court Rule 431(b) (eff. May 1, 1997); and (2) the admission of testimony from a forensic analyst who relied on a DNA report prepared by a nontestifying third-party analyst violated his confrontation clause rights according to *Crawford v. Washington*, 541 U.S. 36 (2004). On December 8, 2010, this court affirmed the trial court in *People v. Kendrick*, No. 1-09-0120 (2010) (unpublished order under Supreme Court Rule 23). On January 30, 2013, our supreme court denied defendant's petition for leave to appeal and entered a supervisory order, directing this court to vacate our previously entered order and reconsider our decision in light of their decision in *People v. Leach*, 2012 IL 111534. *People v. Kendrick*, No. 111705 (Ill. Jan. 30, 2013) (supervisory order). We have vacated our previous order and again affirm the circuit court.

¶ 2     The evidence adduced at trial revealed that in the early morning hours of September 14, 2003, the victim was walking home from a party when defendant approached her from behind, put something against her back, and forced her into a car. Defendant drove to an alley, parked the car, and sexually assaulted the victim. Once he finished, defendant opened the car door and told the victim she could get out. When the victim got out of the car, defendant asked her if she needed any money to get home. The victim declined the money and walked to a nearby hospital, where she provided a blood sample and a vaginal swab for a sexual assault kit (kit). Nurse Evangeline Mondala sealed the kit and placed it in a secure lock box in the emergency room. On September 20, 2003, Pacita DeJesus, an emergency room nurse, released the kit to Officer Charles Widestrom, an evidence technician with the Chicago police department, who inventoried the kit under a unique inventory number and placed it in a secure locker prior to sending it to the Illinois State Police crime lab the next day. The kit was subsequently sent to Orchid Cellmark, a DNA testing facility, and analyzed

by Nicole Laurent, a forensic analyst. Laurent submitted a report to the Illinois State Police crime lab stating that the vaginal swabs from the kit contained two DNA profiles, that of the victim and of a primary male donor.

¶ 3 In 2006, defendant was convicted on an unrelated felony and, pursuant to a court order, was required to provide a blood sample for the Combined DNA Index System (CODIS). Defendant's DNA was subsequently analyzed at the Illinois State Police crime lab and determined to be a match with the DNA profile from semen recovered from the victim's vaginal swabs. On February 8, 2007, the victim viewed a lineup and positively identified defendant as her attacker. Defendant was charged with several counts of aggravated criminal sexual assault, criminal sexual assault, and criminal sexual abuse.

¶ 4 Prior to trial, defendant filed a motion *in limine*, seeking to exclude the testimony of Wanda Kuperus, a forensic scientist from Orchid Cellmark, whom the State intended to call as a witness to testify regarding that laboratory's DNA testing and analysis of the victim's sexual assault kit. Defendant argued that because Kuperus did not actually perform the DNA testing, her testimony would lack proper foundation and would violate his sixth amendment confrontation right. The trial court denied defendant's motion and ruled that Kuperus would be permitted to testify if the State laid a proper foundation for her qualifications as an expert and established that such testimony is relied upon in the DNA field.

¶ 5 At trial, Kuperus was accepted as an expert in the fields of DNA analysis and forensic biology without objection from defendant. Kuperus testified that Orchid Cellmark is an accredited laboratory and described the process of accreditation, proficiency testing, and technical review. Kuperus explained to the jury what DNA is, how DNA analysis is performed, and how DNA profiles are developed. Kuperus stated that the methods of DNA analysis used at Orchid Cellmark are generally accepted in the scientific community.

¶ 6 Kuperus testified that Orchid Cellmark was asked to perform forensic biology and DNA analysis on the victim's sexual assault kit, which arrived at Orchid Cellmark in a sealed condition on February 24, 2004. Kuperus used Orchid Cellmark's case file and report from the instant case during her testimony, without objection from defendant. Kuperus testified that the victim's DNA profile was developed from a blood standard that was included in the kit. According to Kuperus, the vaginal swabs from the kit were tested and found to contain a mixture of two DNA profiles, the victim's and a male donor's. Kuperus opined to a reasonable degree of scientific certainty that the bodily fluid from the male DNA profile was from semen. Kuperus stated that the DNA results generated by Orchid Cellmark were summarized in a report and submitted to the Illinois State Police crime lab. That report included the DNA profile of the victim and of the unknown male donor. Kuperus said that she technically reviewed that report prior to testifying and verified that a proper chain of custody was maintained over the evidence at all times and that the proper protocol was followed during the testing done by Orchid Cellmark.

¶ 7 Prior to cross-examination, defense counsel renewed his motion *in limine* regarding Kuperus's testimony based on a lack of foundation and confrontation clause grounds. The trial court again denied the motion, stating:

"[T]he State did lay a proper foundation insofar as *** Ms. Kuperus testified that all of

the testing that was done is tests that are commonly recognized and accepted in the scientific community. So the foundation was laid. I don't feel that the State has to show that Miss Laurent is unavailable because you have the expert here who is available for cross-examination and you can confront her and cross-examine her. She's forming her opinion as her opinion not anyone else's opinion, it's her opinion based on notes from somebody else and those notes were made from tests that are commonly recognized and accepted in the scientific community. So I think the chain has been laid."

¶ 8 On cross-examination, Kuperus testified that she did not perform the actual laboratory testing on the victim's sexual assault kit and that Nicole Laurent was the analyst and Lewis Maddox was the reviewer in this case. Kuperus said that she did not retest the DNA but spent approximately five hours examining the data produced by Laurent. Kuperus testified that the presumptive acid photophase test was positive for semen and that a confirmatory test with a microscope was positive for the presence of spermatazoa. She also stated that although it is her opinion that the vaginal swabs from the kit contained two DNA profiles, she could not rule out the possibility of that there was an additional person's DNA profile on the swab.

¶ 9 The State's next witness was Gitana Wallace, a forensic scientist with the Illinois State Police, who testified as an expert in DNA analysis without objection from defendant. Wallace used her case file notes during her testimony, also without objection. Wallace testified that she performed DNA analysis on defendant's buccal swab and developed a DNA profile that was suitable for comparison. Wallace stated that she then compared defendant's DNA profile with the male DNA profile identified by Orchid Cellmark on the victim's vaginal swabs and determined that the profiles matched. Wallace opined that the profile would be expected to occur in 1 in 1.2 quintillion black, 1 in 3.5 quintillion white, and 1 in 820 quadrillion Hispanic unrelated individuals and that her conclusions were within a reasonable degree of scientific certainty.

¶ 10 The jury ultimately found defendant guilty of aggravated criminal sexual assault. The trial court denied defendant's motion for judgment notwithstanding the verdict or in the alternative a new trial and proceeded to sentencing. In aggravation, the State presented defendant's three prior convictions for armed robbery and a conviction for possession of a controlled substance, as well as a victim impact statement. Following additional evidence in aggravation and mitigation, the court sentenced defendant to an extended-term sentence of 45 years' imprisonment. Defendant's motion to reconsider that sentence was denied. This appeal followed.

¶ 11 On appeal, defendant first argues that the trial court failed to adequately question prospective jurors pursuant to the requirements of Illinois Supreme Court Rule 431(b) (eff. May 1, 1997). That rule codifies the Illinois Supreme Court's holding in *People v. Zehr* that four inquiries must be made of potential jurors in a criminal case that " 'go[ ] to the heart of a particular bias or prejudice which would deprive [a] defendant of his right to a fair and impartial jury.' " *People v. Zehr*, 103 Ill. 2d 472, 477 (1984) (quoting *People v. Zehr*, 110 Ill. App. 3d 458, 461 (1982)). Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed

innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

¶ 12 In this case, the trial court said the following to the first venire of potential jurors:

"Do you understand and accept a person accused of a crime is presumed to be innocent of the charge against him or her? If you do not understand that or accept that, please raise your hand. Indicating that no one has raised their hand. Do you understand and accept that the presumption of innocence that stays with the defendant throughout the trial and is not overcome unless from all the evidence you believe the State proved his or her guilt beyond a reasonable doubt? If you do not understand and accept that, please raise your hand? Indicating no one has raised their hand. Do you understand that means the State has the burden of proving the defendant guilty beyond a reasonable doubt[?] If you do not understand that, please raise your hand. Indicating no one has raised their hand. Do you understand that this means the defendant does not have to prove his innocence? If you do not understand that, please raise your hand. Indicating that no one has raised their hand. Do you understand that this means the defendant does not have to present any evidence on his own behalf? If you do not understand that, please raise your hand? Indicating that no one has raised their hands. Do you understand that this means the defendant does not have to testify if he does not wish to? If you do not understand and accept that, please raise your hand. Indicating that no one has raised their hands. Do you understand and accept that if the defendant does not testify, this must not be considered by you in any way in arriving at a verdict? If you do not understand and accept this, please raise your hand. Indicating no one has raised their hand. Do you also understand that if the defendant does testify, you should judge his testimony in the same manner as you would judge the testimony of any other witness. If you do not understand and accept that, please raise your hand."

¶ 13 From that venire, 12 jurors were selected. The trial court then brought in a panel of 11 prospective jurors in order to select alternates and admonished them as follows:

"[Do you] [u]nderstand and accept that a person accused of a crime is presumed to be innocent of the charges against him or her[?] If your answer is no, please raise your hand. Indicating no one has raised their hand. Do you understand and accept that the presumption of innocence stays with the defendant throughout the trial and is not overcome unless from all the evidence you believe the State proved his or her guilt beyond a reasonable doubt? If your answer is no, please raise your hand? Mr. Martin raised his hand. Do you understand that this means the State has the burden of proving the defendant's guilt beyond a reasonable doubt? If you answer is no, please raise your

hand. Indicating that no one has raised their hand. Do you understand that this means the defendant does not have to prove his innocence? If you answer is no, please raise your hand. Indicating no has raised their hand. Do you understand this means the defendant does not have to present any evidence on his own behalf? If your answer is no, please raise your hand. Indicating no one has raised their hand. Do you understand and accept that this means the defendant does not have to testify of he does not wish to[?] If your answer is no, please raise your hand. Indicating no has raised their hand. Do you understand and accept that if the defendant does not testify, that this must not be considered by you in any way in arriving at your verdict? If your answer is no, please raise your hand. Indicating no one has raised their hand. Do you understand and accept that if the defendant does testify, you should judge his testimony in the same manner as you would judge the testimony of any witness[?] If your answer is no, please raise your hand. Indicting no one has raised their hand."

¶ 14    Two alternates were selected from that panel. The juror who indicated that he did not understand and accept that the defendant is presumed innocent was dismissed for cause.

¶ 15    Defendant contends that the trial judge violated Rule 431(b) because, although she asked prospective jurors whether they understood and accepted that the defendant is presumed innocent and that his failure to testify could not be considered by jurors in reaching their verdict, she only asked whether they understood that the State had the burden of proving defendant guilty beyond a reasonable doubt and that the defendant did not have to present any evidence but did not ask whether they "accept" those two principles. Defendant concedes that he did not object to the alleged error at trial and failed to raise it in his motion for a new trial, which ordinarily results in forfeiture of the issue. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). However, defendant contends that forfeiture should not be applied here because amendments to Rule 431(b) specifically eliminated the requirement that defense counsel object in order to preserve the error for review and because a judge's conduct is at issue, and defense attorneys are reluctant to challenge the authority of the trial judge. Our supreme court has held that the forfeiture rule may be relaxed when a trial judge oversteps his or her authority in the presence of the jury or when counsel has been effectively prevented from objecting because it would have " 'fallen on deaf ears.' " *People v. Hanson*, 238 Ill. 2d 74, 118 (2010) (quoting *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)). However, the failure to preserve an error will be excused only in extraordinary circumstances, such as when a judge makes inappropriate remarks to a jury or relies on social commentary instead of evidence in imposing a death sentence. *McLaurin*, 235 Ill. 2d at 488. Absent a showing that the trial court would have ignored an objection to the Rule 431(b) questioning, there is a presumption that the trial court would have complied with the mandatory language of the rule had the error been pointed out at trial. *People v. Thompson*, 238 Ill. 2d 598, 612 (2010). As our supreme court held in *Thompson*, because a simple objection would have allowed the trial court to correct the error during *voir dire*, there is no compelling reason to relax the forfeiture rule in this case. Therefore, we must determine whether, as defendant alternatively suggests, we should review his claim pursuant to the plain error doctrine. Ill. S. Ct. R. 615(a).

¶ 16    The plain error doctrine allows a reviewing court to reach an unpreserved error in two

circumstances: (1) when a clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the error, or (2) when a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The burden of persuasion remains with the defendant in both instances. *McLaurin*, 235 Ill. 2d at 495. The first step in any plain error analysis is to determine whether clear or obvious error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). Defendant asserts that because the judge did not specifically ask potential jurors whether they accepted all four *Zehr* principles, she failed to comply with the strict requirements of Rule 431(b).

¶ 17 Relying on *People v. Vargas*, 396 Ill. App. 3d 465, 472-73 (2009), the State argues that the trial judge is not required to use specific language when addressing Rule 431(b) principles and contends that here the judge complied with the rule by setting forth the four principles and giving prospective jurors an opportunity to express whether they had any problems or concerns with them. In *Vargas*, the defendant asserted that the trial court's inquiry into the fourth *Zehr* principle was inadequate when he asked the venire: " 'Do all of you understand and agree with the proposition of our law that the defendant does not have to testify on his own behalf, if he does not wish to; and if he does not, that should not be considered by you in any way in arriving at your verdict? If you will not promise me that, please raise your hand.' " *Vargas*, 396 Ill. App. 3d at 471. This court disagreed and stated that "[w]hile this might not be the most succinct approach to the inquiry, we nevertheless perceive that it was sufficient to ascertain the understanding and acceptance of the potential jurors of the principle articulated. Manifestly, we believe phrasing it as the trial judge chose to do, prefaced with the concept of agreement, fairly covered both understanding and acceptance." *Vargas*, 396 Ill. App. 3d at 472-73.

¶ 18 The State asserts that as in *Vargas*, we should find that the trial judge's admonishments adequately addressed the Rule 431(b) principles. While we agree that the trial judge need not use the specific language of Rule 431(b), error occurs where the trial court does not question each venireperson as to whether he or she understood and accepted each of the *Zehr* principles. *People v. Magallanes*, 409 Ill. App. 3d 720, 730 (2011). Here, the trial judge made no inquiry into the prospective jurors' acceptance of two of the *Zehr* principles. Accordingly, we conclude that the trial court violated Rule 431(b).

¶ 19 The finding of error does not end our analysis, however. We must next consider whether the error falls into one of the two categories identified in *Piatkowski*. Defendant does not argue that the evidence is so closely balanced that the error alone threatened to tip the scales of justice against him. Instead, he contends that the error was so serious that it affected the integrity of the judicial process and requires automatic reversal. In such cases, "[p]rejudice to the defendant is presumed because of the importance of the right involved." *People v. Herron*, 215 Ill. 2d 167, 187 (2005). However, in *Thompson*, our supreme court held that a violation of Rule 431(b) is not a structural error requiring automatic reversal. *Thompson*, 238 Ill. 2d at 611. The *Thompson* court further held that, absent evidence of a biased jury, a violation of Rule 431(b) is not reversible under the second prong of plain-error review. *Thompson*, 238 Ill. 2d at 615. Defendant has not argued on appeal that there is evidence that

he was tried before a biased jury. In addition, the *Thompson* court declined to impose a bright-line rule of reversal for violations of Rule 431(b). *Thompson*, 238 Ill. 2d at 616. Accordingly, we conclude that defendant has failed to show reversible error on this issue.

¶ 20    Next, defendant contends that the admission of testimony from Wanda Kuperus from Orchid Cellmark regarding the two DNA profiles identified on the victim's vaginal swabs violated his sixth amendment confrontation right. A defendant's claim that his sixth amendment confrontation rights were violated is a question of law, which we review *de novo*. *People v. Lovejoy*, 235 Ill. 2d 97, 141-42 (2009). The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. This part of the sixth amendment is called the confrontation clause and applies to the states through the fourteenth amendment. *People v. Stechly*, 225 Ill. 2d 246, 264 (2007). In *Crawford*, the United States Supreme Court held that testimonial statements of witnesses are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, the Court also stated that the confrontation clause does not bar the admission of testimonial statements that are admitted for purposes other than the matter asserted. *Crawford*, 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

¶ 21    Defendant contends that Kuperus's testimony regarding the two DNA profiles identified on the victim's vaginal swabs was testimonial hearsay and should not have been admitted at trial because Nicole Laurent, the analyst who prepared the profiles, did not testify, the State did not show that Laurent was unavailable, and the testimony was offered to prove the truth of the matter asserted, that the male DNA profile from the victim's vaginal swabs matched defendant's DNA profile.

¶ 22    This court previously filed an order concluding that Kuperus's testimony did not violate defendant's sixth amendment confrontation clause rights. *People v. Kendrick*, No. 1-09-0120 (2010) (unpublished order under Supreme Court Rule 23). Thereafter, the supreme court denied defendant's petition for leave to appeal and entered a supervisory order directing this court to vacate that order and reconsider the matter in light of *People v. Leach*, 2012 IL 111534. *People v. Kendrick*, No. 111705 (Ill. Jan. 30, 2013) (supervisory order). Having done so, we conclude that Kuperus's testimony did not violate defendant's sixth amendment confrontation clause rights.

¶ 23    Our supreme court addressed defendant's argument in *People v. Williams*, 238 Ill. 2d 125 (2010), *aff'd*, 567 U.S. ___, 132 S. Ct. 2221 (2012). In *Williams*, following a bench trial, defendant was convicted of two counts of aggravated criminal sexual assault and one count each of aggravated kidnapping and aggravated battery of L.J., a 22-year-old female victim who was sexually assaulted while walking home from work. At trial, Sandra Lambatos, a former forensic biologist with the Illinois State Police crime lab, was accepted by the trial court as an expert in forensic biology and forensic DNA analysis. *Williams*, 238 Ill. 2d at 131. During her testimony, over defendant's objection, Lambatos opined that defendant's DNA profile matched the male DNA profile found in the semen from the victim's vaginal swabs. In forming that opinion, Lambatos relied on a report prepared by Cellmark Diagnostic Laboratory in Germantown, Maryland, where the victim's sexual assault kit had been sent

for DNA analysis. *Williams*, 238 Ill. 2d at 131-33. The Cellmark analyst who performed the testing did not testify and the report itself was not introduced as evidence.

¶ 24    On appeal, the defendant argued, *inter alia*, that Lambatos' testimony regarding the Cellmark report was hearsay presented for the truth of the matter asserted and therefore, violated his sixth amendment right to confrontation. *Williams*, 238 Ill. 2d at 141. Our supreme court disagreed. First, the court noted that although the hearsay rule generally prohibits the introduction of out-of-court statements offered for the truth of the matter asserted, "[t]his court has long held that prohibitions against the admission of hearsay do not apply when an expert testifies to underlying facts and data, not admitted into evidence, for the purposes of explaining the basis of his opinion." *Williams*, 238 Ill. 2d at 143 (citing *Lovejoy*, 235 Ill. 2d at 142). For instance the court noted, in *Lovejoy*, a medical examiner testified that a report prepared by another toxicologist, which detected six types of drugs in the victim's body, aided him in determining that the victim's cause of death was poisoning. The court held that the medical examiner's testimony repeating the nontestifying analyst's conclusions was not admitted for the truth of the matter asserted, but rather was introduced "to show the jury the steps [the examiner] took prior to rendering an expert opinion in this case." *Lovejoy*, 235 Ill. 2d at 144. Therefore, the court determined there was no confrontation clause violation. *Lovejoy*, 235 Ill. 2d at 145.

¶ 25    In another case cited by the court, *People v. Johnson*, 394 Ill. App. 3d 1027 (2009), the defendant challenged an expert's testimony regarding DNA test results on the grounds that he had no opportunity to cross-examine the analysts who conducted the testing. This court noted that experts are permitted to disclose underlying facts and data to the jury in order to explain the basis for their opinions and concluded that the State offered the DNA report as part of the basis for the expert's opinion and that no confrontation violation occurred. *Johnson*, 394 Ill. App. 3d at 1034.

¶ 26    Relying on *Lovejoy* and *Johnson*, the *Williams* court concluded that Lambatos' testimony was not admitted for the truth of the matter asserted, but rather to show the underlying facts and data Lambatos used in rendering her expert opinion in the case. Further, the court noted that the evidence against the defendant was Lambatos' opinion, not the Cellmark report, which was not even admitted into evidence. *Williams*, 238 Ill. 2d at 145. The court also rejected the argument that Lambatos was merely a "conduit" for Cellmark's report and that the report was entirely dispositive of Lambatos' opinion, noting that she used her expertise to compare the two profiles and made her own visual and interpretive comparisons in reaching her conclusion that there was a match to the defendant's DNA profile. Therefore, the court found that her testimony was not hearsay and that *Crawford* considerations do not apply. *Williams*, 238 Ill. 2d at 146-47, 150.

¶ 27    After we issued our original dispositional order in this case, the United States Supreme Court affirmed our supreme court's decision in *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012) (plurality op.). In doing so, a plurality of the Court concluded:

    "[T]his form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution in a criminal

case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Williams*, 567 U.S. at ___, 132 S. Ct. at 2228.

The plurality also provided a "second, independent basis" for its decision, stating:

"[W]e also conclude that even if the report produced by Cellmark had been admitted into evidence, there would have been no Confrontation Clause violation. The Cellmark report is very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach. The report was produced before any suspect was identified. The report was sought not for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose. And the profile that Cellmark provided was not inherently inculpatory. On the contrary, a DNA profile is evidence that tends to exculpate all but one of the more than 7 billion people in the world today. The use of DNA evidence to exonerate persons who have been wrongfully accused or convicted is well known. If DNA profiles could not be introduced without calling the technicians who participated in the preparation of the profile, economic pressures would encourage prosecutors to forgo DNA testing and rely instead on older forms of evidence, such as eyewitness identification, that are less reliable. [Citation.] The Confrontation Clause does not mandate such an undesirable development. This conclusion will not prejudice any defendant who really wishes to probe the reliability of the DNA testing done in a particular case because those who participated in the testing may always be subpoenaed by the defense and questioned at trial." *Williams*, 567 U.S. at ___, 132 S. Ct. at 2228.

Justice Thomas, who concurred in the judgment, agreed with the plurality that the disclosure of Cellmark's out-of-court statements through Lambatos' expert testimony did not violate the confrontation clause, but on the grounds that Cellmark's statements lacked the requisite "formality and solemnity" to be considered "testimonial" for purposes of the confrontation clause. (Internal quotation marks omitted.) *Williams*, 567 U.S. at ___, 132 S. Ct. at 2255 (Thomas, J., concurring in the judgment).

¶ 28 Following the United States Supreme Court's decision in *Williams v. Illinois*, our supreme court, in *People v. Leach*, 2012 IL 111534, ¶ 50, had occasion to address whether the admission of expert testimony recounting autopsy findings of another pathologist, and admission of the autopsy report itself, violated the confrontation clause. The supreme court initially noted that "if the report was properly admitted, the expert witness's testimony cannot have violated the confrontation clause even if it had the effect of offering the report for the truth of the matters asserted therein." *Leach*, 2012 IL 111534, ¶ 57.

¶ 29 In determining whether the autopsy report constituted testimonial hearsay for purposes of *Crawford*, the supreme court conducted a thorough review of *Crawford* and its progeny up until *Williams v. Illinois*. *Leach*, 2012 IL 111534, ¶¶ 77-121. The supreme court then summed up the positions of the plurality and dissent in *Williams v. Illinois* as follows:

"When we must determine whether a forensic report is testimonial in nature, the *Williams* plurality instructs us to apply an objective test, looking for 'the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances.' [Citation.] If this inquiry reveals that the forensic report was 'made for the purpose of proving the guilt of a particular criminal defendant at trial' [citation], it is testimonial.

The *Williams* dissent rejects this focus on the targeting of a particular individual, reminding us that *Davis* formulated the test as whether the out-of-court statement was 'made for the primary purpose of establishing past events potentially relevant to later criminal prosecution–in other words, for the purpose of providing evidence.' [Citation.] The dissent accuses the plurality of adopting, without explanation, a new formulation of the primary purpose test when forensic testing is involved, asking whether the report was prepared 'for the primary purpose of accusing a targeted individual.' [Citation.]" (Internal quotation marks omitted.) *Leach*, 2012 IL 111534, ¶¶ 120-21.

The supreme court ultimately concluded that under either of the definitions of "primary purpose," the autopsy report in that case was not testimonial because it was prepared neither for the primary purpose of accusing a targeted individual, nor for the primary purpose of providing evidence in a criminal case. *Leach*, 2012 IL 111534, ¶ 122.

¶ 30    The supreme court did not address in *Leach* the issue presently before us, *i.e.*, whether expert opinion testimony based on a DNA report prepared by someone else violates the confrontation clause. Rather, this issue was squarely addressed by the United States Supreme Court in *Williams v. Illinois*, and a majority of the Court agreed in that case "that an expert may testify regarding the DNA analysis in a report prepared by another analyst without violating the confrontation clause." *People v. Negron*, 2012 IL App (1st) 101194, ¶ 56; see *Williams*, 567 U.S. at ___, ___, 132 S. Ct. at 2228 (plurality op.); 2255 (Thomas, J., concurring in the judgment). Applying that narrow holding here, we must conclude that Kuperus's testimony based on the Orchid Cellmark report did not violate defendant's sixth amendment confrontation clause rights. *Negron*, 2012 IL App (1st) 101194, ¶ 56.

¶ 31    Defendant argues, that the instant case is analogous to the United States Supreme Court's holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and supports a finding that the expert testimony should not have been admitted. In *Melendez-Diaz*, the Court considered whether a certification by a lab analyst as to the nature and weight of a controlled substance was a testimonial statement and whether its admission in lieu of live testimony by the analyst violated defendant's sixth amendment confrontation rights. In that case, the defendant was charged with cocaine trafficking and at trial, the prosecution placed into evidence white plastic bags containing a substance that looked like cocaine, as well as three "certificates of analysis" stating that the results of forensic analysis showed that the substances in the bags were found to contain cocaine. *Melendez-Diaz*, 557 U.S. at 308. The certificates were sworn to before a notary public by analysts at the State Laboratory Institute of the Massachusetts Department of Public Heath as required by Massachusetts law. *Melendez-Diaz*, 557 U.S. at 308.

¶ 32    Relying on *Crawford*, the Court held that the analysts' certificates "were testimonial

-11-

statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to ' "be confronted with" ' the analysts at trial." (Emphasis in original.) *Melendez-Diaz*, 557 U.S. at 311 (citing *Crawford*, 541 U.S. at 54). The Court's holding was based on its finding that the forensic analyst's statements were within the " 'core class of testimonial statements' " in *Crawford* and "not only were the affidavits ' "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," ' [citation], but under Massachusetts law the *sole purpose* of the affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance." (Emphasis in original.) *Melendez-Diaz*, 557 U.S. at 310-11. Therefore, the Court concluded that the defendant's confrontation clause right had been violated.

¶ 33      The defendant argues that like the certificates in *Melendez-Diaz*, the DNA profiles were prepared under circumstances that would lead an objective witness to believe they would be available for use at a later trial and were created to further the prosecution of the offense and therefore, were testimonial. We reject defendant's comparison to *Melendez-Diaz*, as the United States Supreme Court's recent decision in *Williams v. Illinois* is clearly more on point.

¶ 34      For the reasons set forth above, we affirm the circuit court.

¶ 35      Affirmed.