[Cite as *State v. Ferguson*, 2018-Ohio-920.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 17CA7 |
| vs. | : | |
| SKIP R. FERGUSON, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Jerry L. McHenry, Pickerington, Ohio, for appellant.[1]

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Heather MJ Armstrong, Pickaway County Assistant Prosecuting Attorney, Circleville, for appellee.

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-6-18
ABELE, J.

{¶ 1} Skip R. Ferguson, defendant below and appellant herein, appeals his Pickaway County Common Pleas Court judgment of conviction and sentence for (1) four counts of rape in violation of R.C. 2907.02(A)(1)(b), and (2) four counts of rape in violation of R.C. 2907.02(A)(2), all first-degree felonies. Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF

---

[1]Different counsel represented appellant during the trial court proceedings.

COUNSEL TO APPELLANT BY FAILING TO OBJECT TO THE TESTIMONY OF THE STATE'S WITNESS MICHAEL MONFREDI, AS TO THE DNA EVIDENCE AND THE TESTING PROTOCOL, WHICH WAS PERFORMED IN PART BY SOME UNKNOWN BCI FORENSIC PERSON."

SECOND ASSIGNMENT OF ERROR:

"TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO SEEK TO SUPPRESS AND EXCLUDE FROM EVIDENCE, THE 'SUICIDE NOTE' FOUND ON A COMPUTER AT APPELLANT'S RESIDENCE."

THIRD ASSIGNMENT OF ERROR:

"TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY CONCEDING THE APPELLANT'S GUILT TO COUNT SEVEN OF THE INDICTMENT, WHICH WAS PREDICATED ON AND BUTTRESSED BY DNA EVIDENCE."

FOURTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL TO APPELLANT, BY FAILING TO REQUEST JURY INSTRUCTIONS AS TO ANY LESSER INCLUDED OFFENSES OTHER THAN RAPE."

{¶ 2}   On September 1, 2016, Circleville Police Department Detective Phillip Roar filed two complaints that charged appellant with two counts of rape with two separate victims, both his daughters.  The arrest report and probable cause affidavit stated that, on or about August 28, 2016, appellant's wife (Carrie) reported to the Circleville Police Department that her two daughters, K.F. (DOB 3/22/03) and R.F. (DOB 6/20/00), disclosed to her that appellant had engaged in sexual intercourse with them since the age of nine.  The affidavit further alleged that appellant caused physical harm, or threatened to cause physical harm or death, to them by hitting or threatening to kill

while brandishing a handgun. The affidavit further noted that the last date of this activity occurred on July 17, 2016, while at their Pickaway County residence. Furthermore, R.F. reported that appellant is the biological father of her child (DOB 2/20/15).

{¶ 3} On September 9, 2016, a Pickaway County Grand Jury returned an indictment that charged appellant with (1) four counts of rape, in violation of R.C. 2907.02(A)(1)(b), and (2) five counts of rape, in violation of R.C. 2907.02(A)(2). Appellant pled not guilty and requested a competency evaluation. Subsequently, the trial court found appellant competent to stand trial and granted the state's two motions to amend the indictment to correct typographical errors.

{¶ 4} At trial, Carrie testified that on August 28, 2016 she learned from her daughters that appellant had been having sexual relations with them for several years. When she confronted appellant, he told her "How can you dare say that I'm doing that? You do what you need to do. I have done nothing."

{¶ 5} After filing a report, Carrie took the girls to Columbus Children's Hospital for examination and left her other children at home in her mother's care. Appellant also remained in the home due to his medical condition.[2]

{¶ 6} Shortly thereafter, officers arrived at the home to either assist Carrie in leaving with her children or asking appellant to leave the home. Carrie also advised officers that appellant might have a firearm. When officers entered the home, appellant refused to drop his weapon. An officer then tased appellant and transported him to the hospital.

---

[2] Carrie testified that appellant had back surgery in 2014, that he improved slightly, but became confined to a wheelchair after a few weeks, stating that he could no longer walk. However, Carrie also testified that appellant's physical disability did not impede his ability to engage in sexual activities and that the two were sexually active until his arrest.

{¶ 7}  During the trial, Carrie testified that she, appellant, their children and her mother had lived at multiple Ohio residences.  The family lived in Blacklick (Franklin County) until March 2006, moved to Chillicothe (Ross County) until 2012, moved to Stoutsville (Fairfield County) from August 2012 through October 2013, resided with Carrie's mother in Circleville (Pickaway County) from October 2013 until January 2014, and lived with appellant's mother in Wellston (Jackson County), then returned to Pickaway County in 2016.[3]  R.F. testified that she remembered being raped in the Blacklick home and at each home in which the family lived.  K.F. also testified that appellant began to abuse her when she was 8 or 9 years old, and that she, too, had been molested in each home.

{¶ 8}  The evidence also revealed that on February 20, 2015, R.F. gave birth to a daughter. Based on indications that the child could be the product of sexual abuse, officers obtained a search warrant for appellant's DNA.  After submitting appellant's DNA, along with samples from both R.F. and her daughter, for analysis, Bureau of Criminal Investigation and Information (BCI) forensic scientist Michael Monfredi testified about the DNA analysis and stated that (1) appellant could not be excluded as the father of the child, (2) the evidence is 2,734,000 times more characteristic of appellant being the biological father than a random man, and (3) a 99.9999% probability exists that the child is appellant's biological child.

{¶ 9}  Carrie also testified that she delivered appellant's laptop computer to Detective Roar. Carrie stated that her mother had actually purchased the laptop for her, but appellant used it almost exclusively.  Based on consent from Carrie and her mother, as well as a search warrant, Detective Roar's computer forensic analysis revealed multiple photographs that depicted suicide methods, as

---

[3]  Pursuant to R.C. 2901.12(H), the state included in the indictment offenses committed in counties other than Pickaway based on the theory of a continuous course of conduct.

well as a document regarding the strengths and weaknesses of children's memories and how children can make false accusations. In addition, Detective Roar located a file that appeared to be a suicide note. In terms of a time frame, Detective Roar testified that the document about children's memories and false accusations was downloaded on August 28, 2016 at 8:47 p.m., the suicide images downloaded between 11:20 p.m. and 11:47 p.m., and the suicide note created around 11:45 p.m. Circleville Police Department Officer Kenneth Fisher testified that on August 28, 2016, officers arrived at the Ferguson home at 11:51 p.m., that Carrie arrived home from Children's Hospital at 12:30 a.m., and officers entered the home at 12:36 a.m.

{¶ 10} Concerning the suicide note, Detective Roar testified that the note states: "I have decided to commit suicide. I follow bushido.[4] I will follow my teacher Musashi, in to ensure my family's honor. I shot myself in the head with a - - - There's just a period there. I also planned a provoked response from the police. Thank you if you helped me as I had this is not a cry for help. I am not depressed. I simply wish to depart in an honorable to my wife I will always love and be with you. To my children I love you all. I am sorry we didn't have more time together. To the rest of my family I love all of you. This is something I have considered for a very long time. Rationally and with great care I must do this. Skip."

{¶ 11} On March 7, 2017, after considering the evidence adduced at trial, the jury found appellant guilty of counts one, two, three, four, six, seven, eight, and nine, but not guilty on count five. Subsequently, the trial court (1) adjudicated appellant a tier III sex offender, (2) sentenced

---

[4]"Bushido" is apparently a Japanese term that refers to "the way of the warriors" and involves the Samurai codes of honor. We assume that this code of honor does not include the type of activities for which appellant has been convicted.

appellant to serve life in prison without parole on count three due to the special finding that the victim was under age ten at the time of the offense, and (3) sentenced appellant to serve 11 years on count one, 11 years on count two, 11 years on count four, 11 years on count six, 11 years on count seven, 11 years on count eight, and 11 years on count nine, with all sentences to be served consecutively to one another.   This appeal followed.

I.

STANDARD OF REVIEW

{¶ 12} Because all of the assignments of error raise the issue of ineffective assistance of counsel, we first discuss the applicable standard of review.   To evaluate an ineffective assistance of counsel claim, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) sets forth the standard for judging ineffective assistance.   "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."   *Id.* at 687-688.   Further, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 13} As the Supreme Court of Ohio instructed in *State v. Sanders*, 94 Ohio St.3d 150, 761 N.E.2d 18 (2002), "*Strickland* charges us to '[apply] a heavy measure of deference to counsel's judgments,' 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, and to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' *id*. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. * * * [W]e note that courts must 'judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695." *Sanders* at 151.

II.

{¶ 14} In his first assignment of error, appellant asserts that trial counsel failed to object to the testimony of the state's witness concerning DNA evidence and testing protocol. Appellant argues that the fact that another unknown BCI forensic person performed a portion of the testing procedure and was not subject to cross-examination constitutes ineffective assistance.

{¶ 15} At trial, BCI forensic scientist Michael Monfredi, defined DNA and explained the process of a DNA comparison. Monfredi stated that he did much of the comparison work on the samples collected from appellant, his daughter, and her child. Monfredi also testified about how the BCI testing process is "technically reviewed, meaning that another qualified forensic scientist looked at all of the information from the laboratory, looks for the comparisons that I have made in the case, and makes their report, and makes their own conclusions based on all that information. And if our conclusion differs in any way, then we discuss that review process. That didn't happen in this case." Monfredi testified that appellant could not be excluded as the biological father of R.F.'s child, and that a 99.9999% probability exists that appellant is the biological father of the child.

{¶ 16} Appellant argues that because Monfredi did not personally perform every step of the procedure, and further described a process that included other BCI staff, this procedure violates appellant's constitutional right to confront witnesses because other participants in the process did not appear in court to testify, and Monfredi did not state with precision what actions the other scientists performed. Monfredi detailed his participation in the analysis, such as examining the three known

standards and comparing the profiles that other scientists created.   Appellant also points out that trial counsel did not object to this testimony, or challenge the evidence through any pre-trial motions.

{¶ 17} The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."   In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), after reviewing the Clause's historical underpinnings, the United States Supreme Court held that it guarantees a defendant's right to confront those "who 'bear testimony'" against him.  *Id.*, 541 U.S. at 51.   A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.  *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 309, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), citing *Crawford* at 54.

{¶ 18} Appellant cites no authority other than *Strickland v. Washington*, *supra,* and *United States v. Cronic* (1984), 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657.   However, as the state indicates *Melendez-Diaz v. Massachusetts, supra,* is an important case regarding the admissibility of lab results based on the Sixth Amendment confrontation clause.   In *Melendez-Diaz,* the United States Supreme Court considered whether affidavits that report forensic analysis results are testimonial.   "In short, under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment.   Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to ' "be confronted with" ' the analysts at trial."  *Melendez*, 557 U.S. 305, 311, citing *Crawford*, *supr*a, at 54, 124 S.Ct. 1354.   However, *Melendez-Diaz* did not address the

admissibility of a second analyst's testimony, or whether the Sixth Amendment requires testimony from another analyst that performed the testing, or at least a portion of the testing procedure.

**{¶ 19}** The Twelfth District examined this issue in *State v. Lopez*, 186 Ohio App.3d 328, 2010-Ohio-732, 927 N.E.2d 1147 (12th Dist.), and noted that *Melendez-Diaz* dicta appears to answer this question. "The dissent in *Melendez-Diaz* sets forth the proposition that major delays will result by requiring live testimony from all those involved in testing and evaluating evidence against a defendant. After posing the question of what an 'analyst' is under the majority opinion, the dissent discusses a scenario in which one person prepares and tests a sample, a second person interprets the print-out of the test, a third calibrates the machine used to test the sample, and yet a fourth certifies that the tester followed established procedures. * * * In response, the majority states, '[C]ontrary to the dissent's suggestion we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Lopez* at ¶ 62, 64.

**{¶ 20}** Other Ohio appellate courts have also held, based on *Melendez-Diaz*, that it is not necessary to call every analyst who may have been involved in the testing process. *See State v. Middlebrooks*, 6th Dist. Lucas No. L-08-1196, 2010-Ohio-2377; *State v. Lanier*, 7th Dist. Mahoning No. 09MA97, 2010-Ohio-6382. Courts in other jurisdictions have also arrived at the same conclusion. *See Pendergrass v. States*, 913 N.E.2d 703 (Ind.2009), *People v. Johnson*, 394 Ill.App.3d 1027, 915 N.E.2d 845 (2009), and *Carolina v. State* 302 Ga.App. 40, 690 S.E.2d 435 (2010). Further, as noted in *Lopez*, federal courts have applied *Melendez-Diaz* in a similar fashion. *See Larkin v. Yates*, C.D. Cal. No. CV09-2034-DSF, 2009 WL 2049991 (July 9, 2009). Also, the jury heard testimony about the process and could assign whatever weight to that evidence that it

deemed appropriate.

{¶ 21} Accordingly, because we conclude that appellant did not satisfy the first prong of *Strickland*, we overrule his first assignment of error.

III.

{¶ 22} In his second assignment of error, appellant asserts that trial counsel's failure to seek to exclude from evidence the "suicide note" found on appellant's computer constitutes ineffective assistance.

{¶ 23} After appellant's arrest, Carrie delivered a laptop computer to the police. Carrie testified that although her mother purchased the computer for her, appellant was the primary user. A forensic examination of the computer revealed a suicide note, articles, pictures that involve suicide and information about why children might make false accusations. Although the trial court did not admit into evidence the documents regarding children lying about sexual molestation or the documents and photos of suicide, counsel did not object to Detective Roar reading the suicide note to the jury and admitting the note into evidence.

{¶ 24} Generally, decisions regarding the admissibility of evidence are within a trial court's broad discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). A decision to admit or to exclude evidence will be upheld absent an abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980). Additionally, even if a court abuses its discretion, a judgment will not be disturbed unless the error affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id*. at 164, 407 N.E.2d 490.

{¶ 25} In the case sub judice, appellant first argues that the note's authorship is uncertain.

However, the record reveals that someone drafted the note less than an hour before police entered the home on August 28, 2016, and just hours after appellant's wife confronted appellant regarding the allegations. Carrie also testified about the time frame when she learned of the allegations, when she confronted appellant, when she visited the police, when she visited Children's Hospital and when she arrived home. Officer Fisher testified that he visited the home that night and Carrie arrived sometime after midnight. It appears from the time stamps on the items found on the laptop, and the fact that appellant is the only person who uses the laptop (with very limited exceptions - such as appellant allowing Carrie to occasionally play games), ample evidence exists on which to draw a conclusion regarding appellant's authorship of the note.

{¶ 26} Second, appellant contends that the note constitutes "other acts" evidence in violation of Evid.R. 404(B), which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The state argues that the note demonstrates appellant's state of mind at the time officers entered the home.

{¶ 27} Evidence of other acts may be admissible if (1) substantial proof exists that the defendant committed the alleged other acts, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Lowe,* 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994), citing *State v. Broom* , 40 Ohio St.3d 277, 282–283, 533 N.E.2d 682, 690–691 (1988); Evid.R. 404(B); R.C. 2945.59. In *Lowe*, at the defendant's aggravated murder trial the trial court, and later the court of appeals, ruled that evidence regarding the defendant's activities with girls, including the victim's daughters, which included dissemination of

sexually explicit material, constituted proper other acts evidence. However, the Ohio Supreme Court held that the evidence met none of the exceptions in the rule such as evidence of identity or modus operandi.

{¶ 28} In *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, after the defendant's convictions for the possession of a controlled substance, trafficking in drugs, and carrying a concealed weapon, this court concluded that the prior acts evidence used to portray the defendant as a known drug dealer did not demonstrate preparation, plan, scheme, or modus operandi. Thus, counsel's failure to object to the introduction of the other acts evidence constituted deficient performance. *Id.*, ¶ 38-41. Moreover, as we turned to the question of prejudice, we concluded that because the record did not contain overwhelming evidence of guilt, a reasonable probability existed that the outcome of the trial would have been different in the absence of the other acts evidence. *Id.* at ¶ 42.

{¶ 29} In the case sub judice, even if we assume the purposes of argument that the suicide note did not demonstrate preparation, plan, scheme, or modus operandi, we nevertheless conclude that, in view of the overwhelming evidence of guilt, no prejudice resulted from the note's admission into evidence. Here, the testimony of appellant's wife and daughters, along with scientific DNA evidence, constitutes overwhelming evidence of appellant's guilt. See, e.g., *People v. Dolan*, 858 N.Y.S.2d 490, 51 A.D.3d 1337 (2008) [any error in the admission of the contents of the defendant's suicide note in a prosecution for attempted kidnapping and assault, was harmless due to overwhelming evidence of guilt]. Once again, aside from the note, the evidence included the testimony of law enforcement officers, appellant's wife, the two victim daughters, as well as DNA evidence that established a 99.999% probability that appellant is the biological father of his daughter's child.

{¶ 30} Accordingly, because the failure to object to this evidence did not affect the outcome of appellant's trial, we overrule appellant's second assignment of error.

IV.

{¶ 31} In his third assignment of error, appellant asserts that trial counsel's act of conceding appellant's guilt as to count seven of the indictment, which is predicated on DNA evidence, constitutes ineffective assistance. At trial, counsel stated: "So I'm not arguing, you know, that none of this happened, obviously we know that one of them did * * * I mean I'm not going to stand up here, and say, you know, we're on the moon when we're on earth, because Count Seven is pretty well penned [sic.] down, and I'm not going to stand here and try to argue against that. But I'm trying to keep my credibility, and I'm trying to keep the credibility of the system. * * *" Appellant argues that his trial counsel had greater concerns with maintaining his own, personal credibility rather than defending his client against the charges.

{¶ 32} The United States Supreme Court has held that defense counsel's failure to obtain a defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient. *See United States v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Moreover, in *United States v. Creech*, E.D.Kentucky No. CR 6:03-23-DCR, 2011 WL 250998 (Jan. 26, 2011), the United States District Court, E.D. Kentucky summarized the treatment of this issue in federal courts: "Numerous courts have held that a concession of guilt on some counts of a multi-count indictment can constitute a reasonable trial strategy. *See United States v. Thomas*, 417 F.3d 1053, 1058 (9th Cir.2005) ('[I]n some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt on one of several charges.' (internal citations omitted)); *United States v. Holman*, 314 F.3d

837, 839 n. 1, 840–41 (7th Cir.2002) ('[C]onceding guilt on one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy which, by itself, does not rise to the level of deficient performance.'); *Farrington v. Senkowski*, 214 F.3d 237, 244 (2d Cir.2000) (finding no *Strickland* violation where defense counsel conceded defendant's guilt on attempted larceny charge in an effort 'to persuade the jury to acquit on the more serious charge'); *Young v. Catoe*, 205 F.3d 750, 759 (4th Cir.2000) ('[C]ounsel's concession of a client's guilt does not automatically constitute deficient performance.'). However, other courts have added the requirement that when the concession is so far-reaching as to amount to a guilty plea, the attorney must obtain the defendant's consent before making that decision. *See*, *e.g.*, *Valenzuela v. United States*, 217 F. App'x 486, 490 (6th Cir.2007)." *Id.* at p.3.

**{¶ 33}** Count seven alleged that appellant engaged in sexual conduct with R.F. "On or about the 1st day of January, 2014 through the 31st day of May 2016." The evidence established that R.F. gave birth on February 20, 2015, and that DNA evidence established a 99.999% probability that appellant is the biological father of his daughter's child. The state contends that appellant's trial counsel's candid and realistic statements enhanced defense credibility with the jury and focused the jury's attention on the portion of the case that appellant actually contested. We recognize that the record does reveal that defense counsel continued to argue against convictions on the other eight counts of the indictment, as well as the special findings in counts one through three concerning the victims' ages. In fact, as the state notes, counsel's strategy was partially successful as the jury (1) found appellant not guilty of count five, and (2) failed to find beyond a reasonable doubt in counts one and two that the victim was under age ten.

**{¶ 34}** It does appear that in the case sub judice, counsel's decision to acknowledge the

indefensible, but mount challenges to the other charges, constitutes a valid trial strategy. Moreover, even if we assume, arguendo, that appellant received ineffective assistance under the first prong of *Strickland,* we believe, after our review of the evidence, that counsel's performance with respect to count seven did not affect the outcome of this case. Once again, DNA evidence established a 99.9999% probability that appellant is the father of his daughter's child. Also, R.F. testified that she had not been sexually active with anyone else during the time that her father molested her. The state further points out that the trial court instructed the jury that counsel's closing arguments are not evidence. *See State v. Wade,* 4th Dist. Ross No. 14CA3435, 2015-Ohio-997 at ¶ 24; *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023 at ¶ 138. Additionally, while appellant argues that the concession of guilt to count seven cannot be construed as trial strategy because he would still have received a life sentence without the possibility of parole even if all other counts had resulted in acquittals, it appears that count seven did not carry a maximum penalty of life in prison without the possibility of parole. Rather, Count seven carried a maximum sentence of eleven years. Counts one through three required special findings that the victim was under age ten at the time of the offense, and, thus, are the counts that carried a life imprisonment consequence. R.C. 2907.02(B).

{¶ 35} Once again, our review of the evidence reveals overwhelming evidence of appellant's guilt that "'reduced the likelihood that the jury's decision was influenced by the argument.'" *State v. Leonard*, 104 Ohio St.3d 54, 169, 2004-Ohio-6235, 818 N.E.2d 229 at ¶ 169, quoting *Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144. Thus, we do not believe that counsel's concession of appellant's guilt to count seven prejudiced appellant.[5]

---

[5]We recognize that the issue of trial counsel conceding guilt over a defendant's express objection is currently under consideration in the United States Supreme Court. On January 17, 2018, the court heard oral

**{¶ 36}** Accordingly, we overrule appellant's third assignment of error.

V.

**{¶ 37}** In his fourth assignment of error, appellant asserts that trial counsel's failure to request jury instructions for any lesser included offenses constitutes ineffective assistance.

**{¶ 38}** In particular, appellant argues that (1) the trial court gave standard jury instructions as to the rape charges, but did not give any lesser included offense instructions; and (2) defense counsel failed to request any lesser included offense instructions.  Appellant argues that because the victim's statements at various points during the trial appeared to be somewhat ambiguous, the jury should have received lesser included offense instructions.

**{¶ 39}** In general, determining whether a lesser included offense instruction is warranted involves a two-part test.  *State v. Fouts,* 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 76, citing *State v. Deanda*, 136 Ohio St.3d 18, 2013–Ohio–1722, 989 N.E.2d 986, ¶ 6; *State v. Wilson*, 4th Dist. Scioto App. No. 13CA3542, 2015–Ohio–2016, ¶ 42–44.  "First, a trial court must determine if the requested charge is a lesser included offense of the charged crime. *Id*.; *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987).  Second, the court must consider the evidence: 'The trial court, after reviewing the evidence, determines whether an instruction on lesser included offenses is appropriate.  The trial court must give an instruction on a lesser included offense if, under any reasonable view of the evidence, it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense.'"  *Fouts* at ¶ 76, citing *State v. Wine*,

---

argument on this issue in *McCoy v. Louisian*a, Case No. 16-8225.  In *McCoy*, counsel argued that because the defendant suffered from severe emotional issues that clouded his judgment in making rational decisions, counsel's strategy to admit guilt reduced the likelihood of the imposition of the death penalty.

140 Ohio St.3d 409, 2014–Ohio–3948, 18 N.E.3d 1207, ¶ 34.

{¶ 40} "A trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, citing *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Generally, appellate courts will not reverse that determination absent an abuse of discretion. An abuse of discretion implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *State v. Keenan*, 143 Ohio St.3d 397, 2015–Ohio–2484, 38 N.E.3d 870, ¶ 7, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Moreover, "[i]n determining whether lesser included offense instructions are appropriate, "the trial court must view the evidence in the light most favorable to the defendant." *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37. "The mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged." *State v. Wilkins*, 64 Ohio St.2d 382, 387, 415 N.E.2d 303 (1980).

{¶ 41} The Supreme Court of Ohio revisited this issue in *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207: "Regardless of who reaps the benefit of the rule, this court has held that a charge on a lesser included offense is required when the facts warrant it and improper when the facts do not warrant it: 'If the trier of fact could *reasonably* find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-included offense, then a charge on the lesser-included offense is required. Conversely, if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required, but is

also improper.'" (Emphasis sic; citation omitted.) *Id.,* citing *State v. Kilby,* 50 Ohio St.2d 21, 24-25, 361 N.E.2d 1336 (1977). Thus, the *Wine* court restated the rule as follows: "If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense." *Wine* at ¶ 25, citing *Wilkins* at 388.

{¶ 42} It is important to understand that a lesser included offense instruction is not warranted every time "some evidence" is offered to support the lesser offense. *State v. Shane,* 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). In fact, *Wine* noted the "potential perils of pervasive lesser-included-offense jury instructions for defendants in cases in which the facts do not support the lesser charge." *Wine* at ¶ 22. Further, *Wine* observed that "a compromise verdict could be more likely in cases in which the defendant presents an all-or-nothing defense. * * * This court has therefore left no doubt that it is the quality of the evidence offered, not the strategy of the defendant, that determines whether a lesser-included-offense charge should be given to a jury." *Wine,* at ¶ 23, 26. However, trial counsel's failure to request instructions on lesser included offenses is often a matter of trial strategy and does not per se establish ineffective assistance of counsel. *State v. Griffie,* 74 Ohio St.3d 332, 658 N.E.2d 764 (1996), citing *State v. Clayton,* 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). Thus, defense counsel's decision to forego an instruction on lesser included offenses, and instead seek an acquittal rather than inviting conviction on a lesser offense, can constitute trial strategy.

{¶ 43} Our review of the evidence in the instant case indicates that appellant chose to present an "all-or-nothing" defense. Appellant did not attempt to argue that he may have participated in lesser gradations of sexual conduct or contact with the victims. Instead, appellant argued that no sexual abuse occurred, while the victims' testimony indicated vaginal rape. Thus, jury instructions for any lesser included offenses would have been inappropriate because the evidence did not, even when considered in a light most favorable to the appellant, present a fact pattern that would have resulted in an acquittal on the rape charges, but a conviction for any other lesser included offense.

{¶ 44} The Supreme Court of Ohio has held that "[a] criminal defendant is not entitled to a jury instruction on gross sexual imposition as a lesser included offense of rape where the defendant denied participation in the alleged offense, and the jury, considering such defense, could not reasonably disbelieve the victim's testimony as to 'sexual conduct,' R.C. 2907.01(A), and, at the same time, consistently and reasonably believe her testimony on the contrary theory of mere 'sexual contact,' R.C. 2907.01(B)." *State v. Johnson* 36 Ohio St.3d 224, 522 N .E.2d 1082 (1988), paragraph two of the syllabus; *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus ("[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense"). "The trial court, after reviewing the evidence, determines whether an instruction on lesser included offenses is appropriate. The trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *Wine* at ¶ 34.

{¶ 45} Consequently, after our review of the record in the case sub judice we cannot conclude

that counsel's failure to seek lesser included offense instructions, when the evidence did not, in fact, warrant such instruction, constitutes ineffective assistance.

{¶ 46} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.   Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.